GEE, Circuit Judge:
 

 G. Dwayne Casbeer appeals from a district court order affirming a bankruptcy court judgment in favor of State Savings & Loan Association of Lubbock. We affirm in part, reverse in part, and remand.
 

 FACTS AND LOWER COURT PROCEEDINGS
 

 During the early 1980’s, G. Dwayne Cas-beer (“Casbeer”) was a real estate developer, owning various properties in Texas. State Savings & Loan Association of Lubbock (“State Savings”) held promissory notes aggregating more than $16 million secured by some of these properties. By mid-March 1984, Casbeer was in arrears on payments due State Savings on an office building located at 401 East Illinois in Midland, Texas. On April 2, Casbeer met with officials from State Savings for the purpose of avoiding foreclosure on that property. In a memorandum agreement on April 2, State Savings agreed that it would not foreclose on the 401 East Illinois property and, if certain conditions were met, would restructure Casbeer’s obligation. In exchange, Casbeer agreed, among other things, to bring current the interest on the 401 East Illinois property within 30 days, to assign profits from six properties
 
 [1]
 
 to State Savings, and to give deeds of trust on two additional properties.
 
 [2]
 
 On April 27, Cas-beer signed the documents reflecting the various assignments and deeds of trust, but only the profit assignment for Lone Star Plaza Midland Shopping Center was notarized in his presence.
 

 Casbeer filed a petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101
 
 et seq.,
 
 on March 4, 1985. In late March and early April 1985, State Savings filed separate motions to lift the stay imposed against foreclosure on eight of Casbeer’s properties.
 
 [3]
 
 Before the hearing on these motions, State Savings filed motions seeking a temporary restraining order and temporary and permanent injunctive relief to restrain Casbeer from using rents from properties on which State Savings held deeds of trust containing rental assignment clauses. Casbeer’s response to State Savings’ motions to lift the stay included affirmative defenses asserting false acknowledgment of recorded deeds of trust, usury, and fraudulent transfers. Following hearings on the motions to lift the stay and for a preliminary injunction,
 
 *1439
 
 the bankruptcy court entered its findings of facts and conclusions of law on August 26, 1985. The court found, among other things, that Casbeer acknowledged only the Lone Star Plaza Midland Shopping Center profit assignment and that a State Savings employee had notarized the remaining profit assignments and deeds of trust without Casbeer’s acknowledgment. The court concluded that the deeds of trust and profit assignments looked “proper and correct,” however, and that the documents provided constructive notice. In orders entered on August 26, September 4, and September 9, the bankruptcy court authorized State Savings to post three properties for immediate non-judicial foreclosure,
 
 [4]
 
 to post four properties for foreclosure in October,
 
 [5]
 
 and to foreclose on those properties if Casbeer failed to make certain interest payments. The court also awarded State Savings a replacement lien on funds that the debtor’s estate received as commission for the sale of the Williamson County Property.
 

 On expedited appeal to the district court, Casbeer argued that the bankruptcy court erred (1) in holding that the improperly executed acknowledgments on the deeds of trust provided constructive notice, (2) in granting State Savings a replacement lien for rent proceeds Casbeer used after filing his bankruptcy petition, and (3) in holding that State Savings did not exact usurious interest by having the deeds of trust and profit assignments executed in its favor. The district court affirmed on all issues. Casbeer then moved to stay the district court order and the bankruptcy court orders pending appeal to this Court. The district court denied that motion. We granted Casbeer’s motion for an expedited appeal and ordered a partial stay of the district court and bankruptcy court orders.
 
 [6]
 

 On this appeal, Casbeer presents three issues for our review: First, whether the district court erred in holding that under Texas law a false acknowledgment of real estate documents can impart constructive notice to a subsequent purchaser. Second, whether the district court erred in holding that State Savings perfected its claim to rents from various Casbeer properties and, if so, whether the court erred in granting State Savings a replacement lien. And third, whether the district court erred in holding that the deeds of trust and profit assignments that Casbeer granted to State Savings were not usurious.
 
 [7]
 

 FALSE ACKNOWLEDGMENT
 

 The first issue in this case is whether the deeds of trust Casbeer signed and sent to State Savings on April 27, 1984 were perfected before Casbeer filed for bankruptcy. If the deeds of trust were perfected, Cas-beer cannot avoid them in his capacity as a debtor-in-possession.
 

 Section 544(a) of the Bankruptcy Code provides that, upon the commencement of a case, a trustee or debtor-in-possession assumes the status of a hypothetical lien creditor or bona fide purchaser of real property. In that capacity, the trustee or debtor-in-possession may avoid any transfer of the debtor’s property if the conveyed interest was not perfected when the case began. 11 U.S.C. § 544 (1979 &
 
 *1440
 
 1986 Supp.).
 
 [8]
 
 State law determines whether an interest in property has been perfected,
 
 Butner v. United States
 
 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979), and in Texas a deed of trust is void as to a creditor or subsequent purchaser not a party to the instrument if the deed has not been recorded, Tex.Prop.Code Ann. § 13.-001 (Vernon 1984). A deed of trust may not be recorded unless the grantor has signed and acknowledged the instrument “in the presence of two or more credible subscribing witnesses” or the instrument has been “acknowledged before and certified by an officer authorized to take acknowledgments.” Tex.Prop.Code Ann. § 12.001 (Vernon 1984).
 

 This case presents us with the question of whether a deed of trust has been perfected when, although it has been recorded
 
 [9]
 
 and has a genuine signature, the signer did not properly acknowledge the deed of trust before the notary public. As the bankruptcy court found, a State Savings employee notarized the two deeds of trust after Casbeer sent them to State Savings on April 27, 1984.
 
 [10]
 
 In affirming the bankruptcy court on the acknowledgment issue, the district court held that a false notarization is a latent defect and, when the issue of forgery is not raised, the recorded deed provides constructive notice. Casbeer contends on this appeal that a false notarization is not a latent defect but that, even if it is, State Savings cannot avail itself of the benefits of the latent defect because it had knowledge of the defect.
 

 Aside from cases involving conveyances by married women, the rule in Texas has long been that “where the defect in an acknowledgment does not appear on the face of the certificate, a record of the instrument is effectual as constructive notice — ” 1 Tex.Jur.
 
 Acknowledgments
 
 § 16 at 425 (1929).
 
 Hill v. Provine,
 
 260 S.W. 681, 684 (Tex.Civ.App.—El Paso 1924, writ dism’d) (fact that notary was interested was not apparent on face of document, hence record was effective for all purposes for which recording is intended);
 
 Southwestern Mfg. Co. v. Hughes,
 
 24 Tex.Civ.App. 637, 60 S.W. 684, 687 (Tex.Civ.App.—5th Dist. 1900, writ ref’d) (where nothing on face of acknowledged instrument showed that notary was disqualified, the record provided notice);
 
 Titus v. Johnson,
 
 50 Tex. 224, 240 (1878) (fact that notary was interested and did not notarize document in a county for which he was authorized was not apparent on certificate, hence record gave notice);
 
 Peterson v. Lowry,
 
 48 Tex. 408, 412 (1877) (a certificate regular on its face that has been recorded is not rendered invalid as notice because the deed was acknowledged by a notary outside his authorized county). “Thus, at least in those cases in which an acknowledgment is not essential to the validity of the instrument, an attack upon the sufficiency of a record that is not defective upon its face may not be made by a subsequent purchaser by showing that the officer taking the
 
 *1441
 
 acknowledgment” was somehow disqualified. 1 Tex.Jur.
 
 Acknowledgments
 
 § 39 at 449-50 (1929).
 

 The false notarizations here do not prevent the recorded deeds of trust from giving constructive notice. Casbeer testified that his signatures were genuine, and he does not challenge the bankruptcy court’s conclusion that the recorded deeds look “proper and correct.” His persistent reliance on cases involving a married woman’s conveyance of the homestead is misplaced. In those cases, acknowledgment was a requirement for the validity of the conveyance — indeed, it
 
 was
 
 her conveyance — and if it was defective the conveyance was void. 1 Tex.Jur.3d
 
 Acknowledgments
 
 § 84 at 298 (1979) (and cases cited therein). No such requirement exists on our facts today.
 

 Casbeer’s alternative argument that state law somehow estops State Savings from enforcing the deeds of trust is also without merit. Even if the deeds of trust had not been recorded, they would have been binding on the parties to the deeds. Tex.Prop.Code Ann. § 13.001(b) (Vernon 1984). The estoppel cases Casbeer cites are again inapposite.
 
 Cockerell v. Callaham,
 
 257 S.W. 316, 320-21 (Tex.Civ.App.—Galveston 1923, no writ), and
 
 Gary v. McKinney,
 
 239 S.W. 283, 285 (Tex.Civ.App.—Beaumont 1922, no writ), each involved the conveyance of a homestead at a time when, because of legislative fears that her husband might coerce her, a married woman had to acknowledge her signature privately before a notary for the conveyance to be valid. In such cases, a purchaser was estopped from enforcing the transfer if the purchaser knew that the acknowledgment had been secured by fraud or force or had been otherwise improperly secured. In Casbeer’s case, the deeds of trust are valid without the acknowledgment and, under § 13.001, can be enforced. A rule involving estoppel of a party with knowledge is therefore irrelevant to this issue.
 

 CASH COLLATERAL AND REPLACEMENT LIEN
 

 The second issue before us today involves rentals from various Casbeer properties for which State Savings had deeds of trust with rental assignment clauses. The issue is whether the district court erred in upholding the bankruptcy court’s decision to grant State Savings a replacement lien for Casbeer’s unauthorized use of rents.
 
 [11]
 

 The bankruptcy court granted the replacement lien because Casbeer used the rents without court or creditor approval. To conclude that the use was unlawful under 11 U.S.C. § 363(c),
 
 [12]
 
 the bankruptcy court had to determine that the rents were cash collateral under 11 U.S.C. § 363(a).
 
 [13]
 
 
 *1442
 
 This conclusion depended on finding that the pre-petition security interests in the relevant properties
 
 [14]
 
 extended to rents from those properties. 11 U.S.C. § 552(b). Whether State Savings’ security interest in each underlying property extended to the rents from that property is a question of state law.
 
 Butner v. United States,
 
 440 U.S. 48, 55-57, 99 S.Ct. 914, 918-19, 59 L.Ed.2d 136 (1979);
 
 Matter of Village Properties, Ltd.,
 
 723 F.2d 441, 443 (5th Cir.1984).
 

 In Texas, an assignment of rents in a pledge to secure a debt
 
 [15]
 
 is not effective “until the mortgagee obtains possession of the property, or impounds the rents, or secures the appointment of a receiver, or takes similar action.”
 
 Taylor v. Brennan,
 
 621 S.W.2d 592, 594 (Tex.1981) (citations omitted). Recently, we interpreted this to mean that the form of the action taken to perfect “is not as important as its substantive thrust — diligent action by the mortgagee which demonstrates that he would probably have obtained the rents had bankruptcy not intervened.”
 
 Village Properties,
 
 723 F.2d at 446.
 

 The only action that the bankruptcy court found State Savings had taken to perfect its interest in rents before Casbeer filed for bankruptcy was to post the properties for foreclosure. As Casbeer points out, however, in
 
 Village Properties
 
 we did not consider conduct taken to permit foreclosure relevant to the issue of whether sufficient conduct had been taken to perfect an interest in rents. 723 F.2d at 442, 446 (fact that mortgagee filed to lift stay to foreclose not considered as evidence of conduct taken to perfect interest in rents).
 
 McGeorge v. Henrie,
 
 94 S.W.2d 761, 762 (Tex.Civ.App.—Texarkana 1936, no writ),
 
 cited with approval in Taylor v. Brennan,
 
 621 S.W.2d 592, 594 (Tex.1981). Accordingly, to the extent that the bankruptcy court and district court relied solely on State Savings’ posting of the properties for foreclosure to conclude that its interest in the rents had been perfected, they erred.
 

 The only additional evidence that the bankruptcy and district courts could have considered on the issue of perfection was State Savings’ post-petition conduct directed towards preventing Casbeer from using the rents. This conduct consisted of the motions State Savings filed to lift the stays and to prevent Casbeer from using the rents and its complaint seeking a temporary restraining order and a temporary and permanent injunction to keep Casbeer from using the rents. Casbeer asserts, however, that none of this evidence can be considered. He argues that, because § 552(b) is subject to § 544,
 
 [16]
 
 a trustee with the authority of a hypothetical lien creditor or a bona fide purchaser can avoid any security interest in rents that is not perfected at the time bankruptcy commences. This being the case, he maintains that unless the conduct relates back to a time before bankruptcy post-petition conduct cannot provide the basis for perfecting a security interest in rents. And, according to Casbeer, the post-petition conduct here does not relate back to a time before bankruptcy.
 

 The starting point to determine whether 11 U.S.C. § 544(a)(1) or (3) prevents the post-petition perfection of a security interest in rents is 11 U.S.C. § 362(a)(4).
 
 [17]
 
 Under § 362(a)(4), any act to perfect any lien
 
 *1443
 
 against property of the estate is stayed by the filing of a bankruptcy petition under 11 U.S.C. §§ 301-303.
 
 [18]
 
 An exception to § 362(a)(4) exists, though, for acts taken “to perfect an interest in property to the extent that the trustee’s rights and powers are subject to such perfection under” 11 U.S.C. § 546(b). 11 U.S.C. § 362(b)(3). Section 546(b) limits a trustee’s § 544 avoiding powers if generally applicable law “permits perfection of an interest in property to be effective against an entity that acquires rights” in the property before the date of perfection. If that law requires that the property be seized or that an action be commenced to perfect the security interest and that action was not taken before the bankruptcy petition was filed, the interest is perfected by post-petition notice. 11 U.S.C. § 546(b).
 

 For State Savings to escape having its rental assignments voided under § 544(a), Texas law must permit a creditor such as State Savings to enforce a security interest in rents against an entity that acquired rights to the rents before the creditor perfected. That is, Texas law must authorize the creditor’s perfection to relate back to a time before Casbeer filed his bankruptcy petition and, as a debtor-in-possession, assumed the status of a lien creditor or bona fide purchaser.
 
 Matter of Gotta,
 
 47 Bankr. 198, 202 (Bankr.W.D.Wash.1984);
 
 In re Electric City, Inc.,
 
 43 Bankr. 336, 339-40 (Bankr.W.D.Wash.1984). Such law is applicable here. While the general rule in Texas with respect to lien priorities is that first in time is first in right, 36 Tex. Jur.2d
 
 Mens
 
 § 12 at 687 (1962) (and cases cited therein), this maxim yields to contractual provisions on lien priorities.
 
 Vahlsing Christina Corp., Inc. v. First Nat’l Bank of Hobbs,
 
 491 S.W.2d 954, 958 (Tex.Civ. App.—El Paso 1973, writ ref’d n.r.e.). In each of the five perfected deeds of trust with rental assignment clauses at issue, the parties either expressly provided that any subsequent liens would be junior to State Savings’ interests
 
 [19]
 
 or expressly prohibited the granting of any later liens without State Savings’ approval, of which there is no evidence that this occurred.
 
 [20]
 
 This being so, we conclude that Casbeer cannot satisfy § 544 on its face and that, even if he were able to do so, the post-petition motions that State Savings filed provided sufficient notice to allow it to perfect its interest in the rents from each property, effective on the date the motion to lift the stay and prevent Casbeer from using rents from that property was filed.
 
 [21]
 

 Taylor v. Brennan,
 
 621 S.W.2d at 594 (not entitled to rentals until assignment is perfected).
 

 Because State Savings perfected its interest in the rents effective on the date the relevant motion to lift the stay as to a specific property was filed, the district court’s disposition of this issue is not entirely correct. The perfection of those interests relates back to a time before bankruptcy for the purpose of § 546(b); perfection does not relate back to a time before bankruptcy for the purpose of entitlement to rents. To allow otherwise would authorize the collection of pre-petition rentals, a result clearly at odds with
 
 Taylor v. Brennan,
 
 621 S.W.2d at 594, and the warning in
 
 Butner v. United States,
 
 440 U.S. at 55, 99 S.Ct. at 918 (quoting
 
 Lewis v. Manufacturers Nat’l Bank,
 
 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961)), that a party should not receive “ ‘a windfall merely by reason of the happenstance of bankruptcy.’ ” For these reasons, the district court erred to the extent that it concluded that post-petition rentals from a given property that accrued before State Savings perfected its interest in the rentals from that
 
 *1444
 
 property represented cash collateral under § 363(a). Similarly, because Casbeer’s argument that the replacement lien was improper depends solely on whether State Savings had perfected its interest in those rents, the district court’s conclusion that the bankruptcy court did not err in granting State Savings a replacement lien is only partially correct. The district court erred to the extent that it affirmed the bankruptcy court’s award of a replacement lien on rentals used before State Savings perfected its interest in each rental assignment. On remand, the court is to subtract from the replacement lien any rentals accruing before State Savings had perfected its interest in those rentals.
 

 USURY
 

 The final issue before us is whether the district court erred in concluding that the deeds of trust and profit assignments that Casbeer transferred to State Savings were not usurious under Texas law. In the bankruptcy court, Casbeer argued that, as consideration for State Savings not foreclosing on his 401 East Illinois Office Building and for altering the terms of that obligation, the deeds of trust and profit assignments were usurious.
 
 [22]
 
 The bankruptcy court interpreted the “savings clauses”
 
 [23]
 
 in the agreements to produce a nonusurious effect, refused to determine whether the payments made or property interests granted on April 2 and April 27 represented interest under Texas Law, and concluded that the deeds of trust and profit assignments terminated when all indebtedness to State Savings had been paid. Construing the papers connected with the transaction as a single instrument, the district court likewise relied on the savings clauses in reaching its conclusion that the documents could not be usurious.
 

 On appeal, Casbeer argues that the district court committed a variety of errors. First, he asserts that the district court erred in not finding that the transfer constituted interest, a conclusion that Casbeer maintains
 
 Alamo Lumber Co. v. Gold,
 
 661 S.W.2d 926 (Tex.1983), demands. Second, Casbeer criticizes the district court for not determining whether this interest was usurious. In this regard, Casbeer argues that the district court should not have interpreted the deeds of trust and profit assignments as a single document. Casbeer asserts that they represent separate, independent obligations. The deeds of trust secured the repayment of all debts to State Savings; the profit assignments conveyed an absolute right to 100 percent of net sales proceeds from the relevant properties. Hence, according to Casbeer, even if he repaid all his other debts to State Savings, he still owed the net proceeds from the properties subject to profit assignments. The district court erred, Casbeer insists, because it treated the simple insertion of a savings clause as a safe harbor for a usurious agreement. Instead of holding that the savings clauses precluded the possibility of usury, Casbeer argues that the district court should have determined whether there was interest in excess of the legal rate and, if so, enforced the Texas usury statute.
 
 [24]
 
 And even if the savings clauses did prevent the transfers from being usurious, the district court still should have applied the savings clauses to avoid usury instead of interpreting those clauses to preclude the possibility of usury.
 

 In Texas, usury “is interest in excess of the amount allowed by law,” and interest “is the compensation allowed by law for the use or forbearance or detention of money....” Tex.Rev.Civ.Stat.Ann. art. 5069-1.01(a), (d) (Vernon 1971). We held in
 
 Imperial Corp. of America v. Frenchman’s
 
 
 *1445
 

 Creek Corp.,
 
 453 F.2d 1338, 1344 (5th Cir.1972), that
 

 whether usury exists is ascertained from the dominant purpose and intent of the parties embodied in the contract interpreted as a whole and in the light of attending circumstances and of the governing rules of law that the parties are presumed to have intended to obey.
 
 Walker v. Temple Trust Co.,
 
 124 Tex. 575, 80 S.W.2d 935 (1935). All papers connected with the transaction are considered.
 
 Greer v. Franklin Life Ins. Co.,
 
 109 S.W.2d 305 (Tex.Civ.App.1937). The Texas courts will find there is no usury if “the language of the contract, taken as a whole, is ... fairly susceptible of that construction,”
 
 Walker v. Temple Trust Co.,
 
 60 S.W.2d 826, 828 (Tex.Civ.App.1933), aff’d, 124 Tex. 575, 80 S.W.2d 935 (Tex.Comm.App.1935); “unless the contract by its express and positive terms evidences an intention which requires a construction that unearned interest was to be collected in all events,”
 
 Peoria Life Ins. Co. v. Harton,
 
 84 S.W.2d 864 (Tex.Civ.App.1935); “unless, upon a fair and reasonable interpretation of all its terms, it is manifest that the intention was to exact more interest than allowed by law,”
 
 Pan-American Life Ins. Co. v. Boyd,
 
 124 S.W.2d 917, 919 (Tex.Civ.App.1938).
 

 This intent does not, therefore, “mean intent to charge a usurious rate of interest. Rather, it means intent to make the bargain made.”
 
 Cochran v. American Savings & Loan Ass’n,
 
 586 S.W.2d 849, 850 (Tex.1979) (citations omitted).
 

 Inquiry in a usury case requires knowing whether the compensation is interest and what it is interest on. The first question for us, then, is whether the consideration State Savings has received or might receive from the transfers represents interest. The parties agree that State Savings received the consideration in exchange for not immediately foreclosing on the 401 East Illinois property. This constitutes forbearance. It is therefore interest for purposes of Tex.Rev.Civ.Stet. Ann. art. 5069-1.01(a) (Vernon 1972),
 
 Meyer v. Mack Sales, Inc.,
 
 645 S.W.2d 493, 495 (Tex.Civ.App.—Corpus Christi 1982, writ ref’d n.r.e.) (“[f]orbearance occurs when there is a debt due or to become due, and the parties agree to extend the time of its payments”);
 
 Tygrett v. University Gardens Homeowners’ Ass’n,
 
 687 S.W.2d 481, 483 (Tex.App.—Dallas 1985, writ ref’d n.r.e.) (defining “use,” “forbearance,” and “detention”), to the extent it is not applied to outstanding principal,
 
 Smart v. Tower Land & Inv. Co.,
 
 597 S.W.2d 333, 341 (Tex.1980) (application of payment to principal may prevent usury).
 
 [25]
 

 To the extent that any consideration actually received from the property transfers would not be payment on principal, we must next determine whether, as Casbeer asserts, this was interest on only the 401 East Illinois obligation. In this regard, we note that much of the consideration Casbeer gave was on property on which he was already indebted to State Savings. More specifically, on April 27, 1984 Casbeer conveyed deeds of trust to State Savings on the Williamson County Property and the Union Tower Vacant Lots; he gave profit assignments on Liberty Square, Lone Star Plaza Midland, Lone Star Plaza Fort Worth, Mesa Verde, Abbe-ville Square Lubbock, and Abbeville Square Arlington. But by March of that year, Casbeer had promissory notes with State Savings pertaining to four of these properties — Liberty Square, Lone Star Midland, Lone Star Fort Worth, and Mesa Verde.
 
 [26]
 
 April 27 deeds of trust
 
 [27]
 
 and profit assign-
 
 *1446
 
 merits
 
 [28]
 
 secured more than the 401 East Illinois obligation. They secured all present and future debt with State Savings.
 

 In
 
 Stephens v. First Bank & Trust of Richardson,
 
 540 S.W.2d 572, 574 (Tex.Civ. App.—Waco 1976, writ ref’d n.r.e.) (citations omitted), the court held that a borrower’s “agreement to pay his own undisputed prior obligations to the lender, as part of the consideration for a new loan, does not render the loan usurious.” There is no usury when a borrower agrees to pay his undisputed prior obligations to the lender, as part of the consideration for a new loan, unless usurious interest is exacted on the preexisting indebtedness. 47 C.J.S.
 
 Interest & Usury
 
 § 171 at 301-302 (1982).
 
 See also Alamo Lumber Co. v. Gold,
 
 661 S.W.2d 926, 928 (Tex.1984) (distinguishing, for the purpose of what is interest, the conditioning of a loan on the assumption of
 
 *1447
 
 a third party’s debt from the borrower agreeing to repay another of his own debts). From this it follows that a debtor’s agreement to give additional security to cover the debtor’s obligations to the lender, as part of the consideration for the lender not foreclosing on one of the debtor’s loans, does not render that loan or the debtor’s other loans with the lender usurious, unless usurious interest is exacted on them. For the purpose of identifying the debt on which the usury is alleged on our facts, anything that State Savings might realize from the additional security — to the extent that it is not applied to principal— represents interest on all indebtedness to which the instruments applied. The interest rate charged cannot be calculated solely on the 401 East Illinois obligation.
 

 Finally, we examine whether the property transfers here were usurious. In this regard, we agree with the district court that the savings clauses in the deeds of trust
 
 [29]
 
 and profit assignments
 
 [30]
 
 prevented State Savings from collecting, charging or receiving interest in excess of what the law allowed at the time. What is left, then, is Casbeer’s argument that, even if the savings clauses prevent the property transfers from being usurious, those clauses must be enforced. That is, State Savings must disgorge any interest in excess of the legal rate. We are at a loss, though, as to how to enforce those clauses at this time. Until State Savings has, under the terms of the financing documents, allocated any consideration it receives between principal and interest — to the extent that it can — a court cannot identify whether any interest has been received in excess of the lawful rate. Casbeer may have a claim for excess interest but, on the record before us, we think it has not yet accrued.
 

 CONCLUSION
 

 The district court order is AFFIRMED in part, REVERSED in part, and REMANDED with instructions to subtract from the replacement lien any rentals included in that lien that accrued before State Sayings perfected its interest in the rentals. The partial stay that this Court imposed in March 1986 on enforcement of the district court and bankruptcy court orders is lifted.
 

 [1]
 

 . These properties were the Liberty Square Office Building, the Lone Star Plaza Midland Shopping Center, the Lone Star Plaza Fort Worth Shopping Center, the Mesa Verde Shopping Center, the Abbeville Square Lubbock Shopping Center, and the Abbeville Square Arlington Shopping Center.
 

 [2]
 

 . Deeds of trust were given on property referred to as the Williamson County Property and the Union Tower Vacant Lots.
 

 [3]
 

 . These properties included the Liberty Square Office Building, the Lone Star Plaza Midland Shopping Center, the Lone Star Plaza Fort Worth Shopping Center, the Union Tower Office Building, the Union Tower Vacant Lots, the Dayton Warehouses, the 312 East Illinois Office Building, and the Williamson County Property.
 

 [4]
 

 . These properties were the Lone Star Plaza Midland Shopping Center, the Union Tower Office Building, and the 312 East Illinois Office Building.
 

 [5]
 

 . These were the remaining properties identified in note 3
 
 supra,
 
 with one exception. The Williamson County Property was sold in April 1985 with court approval.
 

 [6]
 

 . State Savings represents in its appellee’s brief that the seven remaining properties were foreclosed on and sold at a trustee’s sale on February 4, 1986. There is nothing in the record to substantiate this.
 

 [7]
 

 . In this appeal, Casbeer seeks to have the liens voided and the sale of each of the properties overturned. State Savings argues that 11 U.S.C. § 363(m) prohibits us from overturning the sales if we should reverse. In response, Casbeer concedes that the sales occurred but contends that the sales can be overturned because there is evidence that at least some of the entities purchasing the properties did not do so in good faith. Because we affirm the district court on the various perfection issues here, the issue of whether part of this appeal is moot is itself moot.
 

 [8]
 

 . 11 U.S.C. § 544(a) provides that
 

 [t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
 

 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or (3)a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser and [sic] has perfected such transfer exists.
 

 [9]
 

 . The parties do not dispute that the documents that Casbeer sent were recorded.
 

 [10]
 

 . For the purposes of this opinion, we refer to this as a false notarization.
 

 [11]
 

 . Casbeer testified that he had used rent proceeds from properties securing his indebtedness to State Savings to pay personal and business expenses and to make post-petition payments to other creditors. Casbeer did this without court approval or the approval of creditors holding an interest in the collateral.
 

 [12]
 

 . 11 U.S.C. § 363(c)(1) authorizes the trustee to enter into transactions in the ordinary course of business without notice or a hearing.
 

 11 U.S.C. § 363(c)(2) prohibits the trustee from using cash collateral in the ordinary course of business unless
 

 (A) each entity that has an interest in such cash collateral consents; or
 

 (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.
 

 [13]
 

 . 11 U.S.C. § 363(a) defines cash collateral to include
 

 cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.
 

 11 U.S.C. § 552(b) provides that
 

 [e]xcept as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits
 
 *1442
 
 acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.
 

 [14]
 

 . These properties included those referred to as Liberty Square, Dayton Warehouse, 312 E. Illinois, Lone Star Plaza Midland, and Lone Star Plaza Fort Worth.
 

 [15]
 

 . The rental agreements do not appear to be absolute assignments, nor does any party so contend.
 

 [16]
 

 . See note 13
 
 supra.
 

 [17]
 

 . In
 
 Village Properties,
 
 we held that there can be post-petition perfection of a security interest in rents. 723 F.2d at 446. We did not reach that result based on 11 U.S.C. §§ 362(a)(4), 362(b)(3), 546(b), or 544(a).
 

 [18]
 

 . Casbeer filed for bankruptcy under 11 U.S.C. § 301.
 

 [19]
 

 . Liberty Square, R., Vol. 1 at 11; Dayton Warehouse, R., Vol. 4 at 1359; 312 E. Illinois, R., Vol. 4 at 1420; Lone Star Plaza Midland, R., Vol. 4 at 1438.
 

 [20]
 

 . Lone Star Plaza Fort Worth, R., Vol. 4 at 1390.
 

 [21]
 

 . The fact that those motions were not styled as motions to give notice of perfecting security interests in rental assignments under 11 U.S.C. § 546(b) does not much matter to us because the notice given was clear.
 

 [22]
 

 .Under Tex.Rev.Civ.Stat.Ann. art. 5069-1.06, Casbeer sought as relief (1) forfeiture of the entire principal amount of all promissory notes with State Savings, (2) cancellation of the deeds of trust securing these notes, (3) judgment for double the amount of interest, and (4) attorney’s fees.
 

 [23]
 

 . See notes 29 and 30
 
 infra
 
 for representative savings clauses.
 

 [24]
 

 . Casbeer calculates the penalty for usury here to be $58,072,125. Casbeer Brief at 36.
 

 [25]
 

 . The deeds of trust expressly provide that amounts received can be applied, in part, to outstanding principal. See note 29
 
 infra.
 

 [26]
 

 . Although not before the bankruptcy court on State Savings’ motions to lift the automatic stay, the record indicates that State Savings held five other notes, secured by at least four other Cas-beer properties.
 

 [27]
 

 . The record contains a deed of trust that Cas-beer conveyed to State Savings on the Williamson County Property. Record, Vol. 5 at 1622. The record also contains two deeds of trust pertaining to the Union Tower Vacant Lots that
 
 *1446
 
 Casbeer conveyed to John R. Meyer, Trustee. The bankruptcy court treated all of these as conveyances to State Savings and, for our purposes here, so shall we. Our record references will be to the Williamson County Property deed of trust. The other deeds appear identical.
 

 Article II of the deed of trust for the Williamson County Property provides that
 

 if Grantor shall pay (or cause to be paid) the Indebtedness as and when the same shall become due and payable and shall perform and discharge (or cause to be performed and discharged) the Obligations on or before the date same are to be performed and discharged, then the liens, security interests, estates and rights granted by the Security Documents shall terminate, otherwise same shall remain in full force and effect.
 

 Record, Vol. 5 at 1628.
 

 Indebtedness is defined in this deed of trust to mean
 

 the principal of, interest on and all other amounts and payments due under or secured by the Note and the other Security Documents, together with all funds hereafter advanced by Beneficiary to or for the benefit of Grantor as contemplated by any covenant or provision herein contained or for any other purpose, and all other indebtedness, of whatever kind or character, direct or indirect, absolute or contingent, owing or which may hereafter become owing by Grantor to Beneficiary, whether such indebtedness is evidenced by note, open account, overdraft, endorsement, surety agreement, guaranty or otherwise, it being contemplated that Grantor may hereafter become indebted to Beneficiary in further sum or sums, the Indebtedness also includes the obligations of Grantor under the Memorandum Agreement (defined herein) as well as any Assignment of Profits, if any, (herein so called) executed by Grantor for the benefit of Beneficiary.
 

 Record, Vol. 5 at 1624.
 

 The deed of trust defines the Note to include [tjhose nine (9) certain promissory notes executed by Maker, payable to the order of Beneficiary, in the total aggregate original principal sum of $18,412,500.00, said nine (9) notes being more fully described on
 
 Exhibit "D"
 
 attached hereto.
 

 Record, Vol. 5 at 1626.
 

 Exhibit D appears to identify nine loans State Savings made to Casbeer before April 1984. Record, Vol. 5 at 1660.
 

 [28]
 

 . The profit assignments appear to be identical in all relevant terms. A representative profit assignment provides:
 

 Assignor hereby grants and assigns to As-signee the following interest (collectively the "Net Profits Interest") in the Property [subject to the assignment] in the following amount and regards:
 

 (i) In the event of any Approval Sale of the property, one hundred percent (100%) of the Net Sales Proceeds realized with respect thereto.
 

 (ii) In the event of the occurrence of one or more Significant Events, one hundred percent (100%) of the Net Proceeds From Significant Events realized with respect thereto. All amounts payable under the preceding paragraph (i) and (ii) (to the extent that such amounts may ever constitute interest), when added to all other amounts constituting interest contracted for, charged or collected by Assignee hereunder shall never exceed the maximum contractual interest rate permitted by applicable law.
 

 Record, Vol. 4 at 1482.
 

 The profit assignment further provides that it
 

 shall terminate and be of no further force or effect when Assignee has received in full from Assignor all payments required pursuant to Section lB(i) and (ii) hereof, all principal and interest on the Notes, all funds do [sic] and payable under the Memorandum Agreement, all interest or other payments required by any other provision hereof, and all additional amounts owing or which hereafter become owing by Assignor to Assignee under the terms of the Notes and/or any other instrument whether presently existing or hereafter entered into by Assignor.
 

 Record, Vol. 4 at 1483.
 

 The Notes are identical to those identified in Exhibit D of the deeds of trust. See note 27
 
 supra.
 

 [29]
 

 . The deeds of trust contain savings clauses that provide that
 

 [i]t is the intention of Grantor, Maker, Guarantor and Beneficiary to conform strictly to the usury laws in force in the State of Texas. Therefore: (i) in the event that the Indebtedness is prepaid or the maturity of the Indebtedness and Obligations is accelerated by reason of an election by Beneficiary, unearned interest shall be cancelled and, if theretofore paid, shall either be refunded to Maker or credited on the Indebtedness, as Beneficiary may elect; (ii) the aggregate of all interest and other charges constituting interest under applicable laws and contracted for, chargeable or receivable trader the Note, the Indebtedness (if unpaid), the other Security Documents or otherwise in connection with the loan transaction contemplated thereby shall never exceed the maximum amount of interest, nor produce a rate in excess of the maximum contract rate of interest that Beneficiary is authorized to charge Maker under applicable law; and (iii) if any excess interest is provided for, it shall be deemed a mistake, and the same shall, at the option of Beneficiary, either be refunded to Maker or credited on the unpaid principal amount (if any), and the Indebtedness shall be automatically reformed as to permit only the collection of the maximum legal contract rate and the amount of interest.
 

 Record, Vol. S at 1653.
 

 [30]
 

 . The profit assignments contain savings clauses that provide that the net profits interest,
 

 when added to all other amounts constituting interest contracted for, charged or collected by Assignee hereunder shall never exceed the maximum contractual interest rate permitted by applicable law.