### In re LAKE AUSTIN CENTRE JOINT VENTURE, Debtor.

#### Bankruptcy No. 88–10500–LK.

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

Oct. 6, 1989.

---

Conde Cox, Austin, Tex., for debtor.

Walter C. Cooke, Brown Mahroney & Oaks Hartline, Austin, Tex., for University of Texas.

## MEMORANDUM OPINION

LARRY E. KELLY, Chief Judge.

The Debtor, Lake Austin Centre Joint Venture, is a Texas partnership. The primary asset of the partnership is an office building located in Austin, Texas. That property is encumbered with a lien held by the University of Texas System. The Deed of Trust that created the lien includes an assignment of rents. The lien on rents was unperfected at the time of the Chapter 11 petition.

The Chapter 11 petition was filed on February 23, 1988. On March 2, 1988, Sayers & Associates, Inc. and Kazen & Price, both tenants in the office building, delivered to the Debtor checks in the amounts of $6,569.00 and $5,248.25 respectively. Those checks represented rent payments for the month of March. On March 3, 1988, the University filed its Notice of Perfection of Interest in Rents. On March 7, 1988, the Debtor deposited the checks for payment in its account at Alliance Bank, and sometime thereafter the drawee banks honored the checks.

On March 24, 1989, the University filed a Motion for Contempt. In its Motion the University asserted that the amounts represented by the checks were cash collateral, and that by using the funds the Debtor violated the Agreed Cash Collateral Order approved by this Court on May 25, 1988. After a hearing, the Court entered an Order Requiring Turnover of Rents. The Debtor filed a timely Motion to Recon-

sider the Order. The Court held a hearing on the Motion to Reconsider on September 27, 1989, to allow additional evidence and argument on the nature of the rents. After hearing the argument of counsel, the Court took the matter under advisement. The Court has determined to vacate its prior Order. This is a core proceeding within the intendment of 28 U.S.C. § 157(b)(2)(A), (B), and (M).

## ANALYSIS

The issue before the Court is whether the University had a perfected security interest in any or all the rentals represented by the checks the Debtor received on March 2, 1988.

The University argued that the Debtor did not have an interest in the funds represented by the checks until the checks were honored by the drawee banks. By that time the University had perfected its interest in the rents, thus the funds were cash collateral. Alternatively, the University argued that the portion of the checks that were for payment of rent for the part of the month after it perfected its interest are cash collateral. The Debtor argued that the rentals were received before perfection and thus were not cash collateral.

■ The question whether a security interest in property extends to rents is to be resolved by reference to state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). In Texas an assignment of rent is not effective until "the mortgagee obtains possession of the property, or impounds the rents, or secures the appointment of a receiver, or takes some other similar action." *Taylor v. Brennan*, 621 S.W.2d 592, 594 (Tex. 1981). When Lake Austin Center Joint Venture filed its Chapter 11 petition, it is undisputed that the University had not perfected its interest in the rents. After the bankruptcy filing § 362(a)(4) of the Bankruptcy Code stayed perfection of liens against property of the estate. However Section 362(b)(3) provides an exception to the stay where the Trustee's rights are subject to perfection under § 546(b). In *Casbeer v. State Federal Savings and Loan Association of Lubbock*, 793 F.2d 1436 (5th Cir.1986) the Court held that Texas law and Section 546(b) of the Bankruptcy Code permitted post-petition perfection of an interest in rents. *Id.* at 1443. The perfection relates back for the purpose of § 546(b), but not for the purpose of entitlement to rents. Rents that accrued before perfection are not cash collateral. *Id.* at 1443–1444.

■ The question of who has the right to receive rents is also property question and should be decided under state law. *See Butner*, 440 U.S. at 55, 99 S.Ct. at 918. The rule in Texas is the one who has the right of possession at the time the rents fall due has the right to receive them; a general rule is that an apportionment is never made. *F. Groos & Co. v. Chittim*, 100 S.W. 1006, 1010 (Tex.1907); *Porter v. Sweeney*, 61 Tex. 213, 216 (1884).

■ The evidence established that the rents at issue in this case are the rents for March 1988. According to the terms of the lease, the rents were due on the first day of the month or March 1, before the assignment of rents was perfected. The University therefore did not have an interest in the March rents on March 1, 1988. The Debtor's right to the rents was established by his right of possession on March 1, 1988, not by receipt of payment. To hold otherwise would put the relative rights of the mortgagor and mortgagee into the fickle hands of a third party. One can imagine unscrupulous mortgagees encouraging tenants to pay rent late so that the mortgagee has time to perfect its interest in the rent, or the possibility that a debtor concerned about imminent perfection would encourage early payment of rent to avoid same. While the University's suggestion that the rent be apportioned according to when its interest was perfected holds some attraction, it is also not in accord with Texas law. This approach also suffers from lack of definiteness. Should the apportionment be made by the week, day, or hour? The lessor-debtor's right to receive rent is not divided into those increments. Once the lease was executed, the debtor had the

right to receive rent throughout the term, due on a monthly basis.

 If actual payment were necessary to establish the Debtor's right to the rent, the Debtor's right was established by receipt of the two checks on March 2nd. Section 363(a) of the Bankruptcy Code de-fines cash collateral as

> "... cash, *negotiable instruments* ... or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to the security interest as provided in § 552(b) of this title, whether existing before or after the

commencement of a case under this title." (emphasis added). State law that may suggest that the Debtor did not have an interest in the funds until the checks were honored by the drawee bank does not decide the issue. Section 363(a) clearly recognizes negotiable instruments as a form of cash collateral, without requiring that they be converted to cash. Checks are negotiable instruments.[1] At the time the Debtor received the checks no other party had a perfected interest in the rents, thus .the checks were not cash collateral. Changing the form of the rent from negotiable instruments to cash has no effect under Section 363.

### CONCLUSION

The rentals represented by the two checks delivered to the Debtor on March 2, 1988 are not cash collateral and are not subject to the Agreed Cash Collateral Order. The rentals are property of the estate. 11 U.S.C. § 541(a)(6). The debtor-in-possession may use them in the ordinary course of business. 11 U.S.C. § 1107(a); 11 U.S.C. § 363(b)(1). For the foregoing reasons, the Order Requiring Turnover of Rents is VACATED and the Motion for Contempt is DENIED. A separate Order

of even date herewith will be entered to evidence this conclusion.

---

1. V.T.C.A., BUS. & C. § 3.104 defines a "negotiable instrument" which includes a check, if drawn on a bank and payable on demand.