**In re Irwin R. SALMANSON, Debtor.**

**Bankruptcy No. 90–12477–LK.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

March 22, 1991.

Kaye Mallory, San Antonio, Tex., Steven R. Smith, Haynes and Boone, Austin, Tex., for Bank One Texas, N.A.

Richard A. Finegan, Salmanson, Smith, Travis, & Schrager, P.C., Austin, Tex., for debtor.

Patrick Lowe, W. Patrick Dodson & Assoc., P.C., Uvalde, Tex., Trustee.

MEMORANDUM OPINION ON MOTION OF BANK ONE TEXAS, N.A. TO RESTRICT TRUSTEE'S USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION PURSUANT TO SECTION 363(E) OF THE UNITED STATES BANKRUPTCY CODE

LARRY E. KELLY, Chief Judge.

Came on to be considered the Motion of Bank One Texas, N.A. ("Bank") to Restrict Trustee's Use of Cash Collateral and for Adequate Protection Pursuant to Section

363(e) of the United States Bankruptcy Code seeking a determination of rights to cash collateral. This Court is asked to decide whether action taken in one bankruptcy case to restrict the use of cash collateral generated by an office building is binding on the Trustee in a subsequent bankruptcy case despite the fact that the property transferred ownership (through foreclosure) and two years passed before the second case was filed.

The Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1334(b) and (d), 28 U.S.C. §§ 157(a) and (b)(1) and the standing Order of Reference existing in this District. This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2)(M). This Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

### GENERAL BACKGROUND

1. The Park Associates, a Texas general partnership ("Park Associates") was the developer and owner of office building known as 3200 Red River in Austin, Texas (the "Property"). Irwin Salmanson ("Debtor") was a general partner of Park Associates as well as a creditor of Park Associates. An involuntary Chapter 11 petition was filed against Park Associates by unpaid mechanics and material lienholders on April 6, 1987 (hereafter referred to as the "First Bankruptcy Case").

2. MBank Austin, predecessor in interest to Bank One, Texas, N.A., (the "Bank") loaned approximately $5.2 million to Park Associates for the Property and was secured by a first lien deed of trust on the Property and by an assignment of rents agreement.

3. The Bank filed a Motion to Prohibit Use of Cash Collateral on June 23, 1987 in the First Bankruptcy Case. The Court conducted a hearing on the motion on October 1, 1987, at which time the parties announced an agreement to the Court on the use of rents from the Property, with the Debtor participating in the agreement as general partner of Park Associates. An order supposedly was circulated among the parties for signature; however, it was never submitted to the Court to be signed and entered into the docket of the case.

4. The parties adhered to the terms of the agreement in that on October 6, 1987, Gillingwater Management Company, now Capstone Real Estate Services, Inc., entered into a management contract with Park Associates to manage the Property. Under that agreement it was to collect the rents, pay the expenses based upon a budget approved by the Bank, and remit any remaining net monthly operating income to the Bank.

5. The Debtor had previously made a loan in the approximate amount of $600,000.00 to Park Associates secured by a second lien on the Property.

6. Sometime after the cash collateral hearing, the Debtor sought and obtained a lift stay order and foreclosed his second lien on the Property on December 1, 1987.

7. After foreclosure, the same management company continued to manage the Property, with the net operating income, if any, being paid to the Bank. It is unknown from the record the nature of the existing management contract, i.e., whether the Bank or the Debtor entered into a new management contract with Capstone or whether the parties continued under the initial management agreement with modifications and renewals.

8. On June 4, 1990, the Debtor filed this Chapter 7 petition (hereafter referred to as the "Second Bankruptcy Case"), and Patrick Lowe was appointed Trustee. This case was originally filed in the San Antonio Division of the Western District of Texas

9. The Property and its cash flow constituted property of the Debtor's estate in the Second Bankruptcy Case.

10. On June 8, 1990, the Bank filed a Motion to Restrict Trustee's Use of Cash Collateral and for Adequate Protection Pursuant to Section 363(e) of the United States Bankruptcy Code.

11. The management company continued collecting rent but stopped paying expenses related to the Property. At the time of the Second Bankruptcy Case, the management company had collected rents

for May and June 1990 in the approximate amount of $94,000.00, with $44,000.00 of that amount earmarked for expenses incurred during those two months.

12. The Trustee abandoned the Property in this case while reserving his claim to the rents collected by the management company.

13. The Bank filed a Motion for Relief from the Automatic Stay to Foreclose on Real Property on June 21, 1990. An order was granted in July of 1990 allowing foreclosure of its lien upon property, defined in said motion as the Deed of Trust (with Security Agreement) and all property described therein, and the Assignment of Rents.

14. The Court held a hearing in this Second Bankruptcy Case on the Motion to Restrict Use of Cash Collateral on August 8, 1990 and entered an order, file-marked August 27, 1990 and entered on the docket on August 28, 1990, finding that the Bank had perfected a lien on the rents from the Property, including the two months rent at issue, by filing its Motion to Prohibit Use of Cash Collateral in the First Bankruptcy Case.

15. On September 6, 1990, the Trustee timely filed a Motion for Reconsideration of the Order Relating to Motion to Restrict Trustee's Use of Cash Collateral. In the interim, this Second Bankruptcy Case was transferred to the Austin Division. By order dated November 19, 1990, this Court granted the Motion to Reconsider and vacated the prior order of August 28, 1990.

16. On December 3, 1990, this Court heard the Bank's Motion to Restrict Trustee's Use of Cash Collateral, the motion at issue.

### FINDINGS OF FACT

1. The facts as set forth above, although somewhat unclear due to the inadequacy of the record, are not in dispute.

2. No objection was made as to the validity of the Promissory Note in the original principal amount of $5.2 million, the Deed of Trust (With Security Agreement), or the Assignment of Rents agreement.

3. The parties argument is solely over who is entitled to the two months of rent:

1) the Bank based upon its alleged perfection in the rents due to its filing a motion to prohibit cash collateral in the First Bankruptcy Case and actual collection of the net rentals by agreement;

2) the Trustee, based upon his contention that the cash collateral ruling in the First Bankruptcy Case or the Bank's collection of net rentals by an alleged agreement is not binding on the Debtor's estate in this case and that the Bank was required to take additional action in this case to perfect (for a second time) its security interest in the rents.

The positions of the litigants may be summarized quickly. The Bank asserts that the action it took in the First Bankruptcy Case constituted sufficient action to perfect its interest in the rents. This perfection occurred before the Debtor foreclosed his second lien on the Property. Further, by the foreclosure, the Debtor became owner of the Property subject to all rights and interests of the Bank existing at that time, including the exercised or operative Assignment of Rents. The Trustee, however, asserts that the Bank did not exercise any rights under the Assignment of Rents agreement against the Debtor after the foreclosure of the Property and that the Bank's perfection as to this second bankruptcy estate could begin no earlier than June 8, 1990, or four days after Debtor's filing bankruptcy when the Bank filed its Motion to Restrict the Trustee's Use of Cash Collateral. Further, the Trustee alleges that the Bank needed to act in the Debtor's case to perfect (or "reperfect") its security interests in the rents because any perfection obtained in the First Bankruptcy Case is not enforceable in the Debtor's case.

### DISCUSSION

To determine rights to the rents, the Court must decide the following issues:

1. Was the ruling made in open court in the First Bankruptcy Case, which was not reduced to a written order entered on the docket, binding upon the Trustee's administration of property of the Debtor's estate?

2. Did the Bank take such affirmative action in the First Bankruptcy Case, or at any time thereafter, sufficient to exercise the Assignment of Rents agreement against the Debtor, and thus, perfect its interest in the rents prepetition as to the Debtor?

> Was the ruling made in open court in the First Bankruptcy Case, which was not reduced to a written order entered on the docket, binding upon the Trustee's administration of property of the Debtor's estate?

1. An agreement was announced to the Court at the hearing held on October 1, 1987 on the Motion of the Bank to Prohibit Use of Cash Collateral in the Park Associates case. A proceedings memorandum taken by the Court's courtroom deputy at this hearing provides evidence of this agreement in the record of the case. However, this proceedings memorandum does not state any of the terms of the agreement, only that the attorney at that time for MBank Austin, N.A. was to submit an order to the Court for signature memorializing the terms of the agreement.

2. Bankruptcy Rule 9021 provides:

> "Except as otherwise provided herein, Rule 58 F.R.Civ.P. applies in cases under the Code. Every judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document. A judgment is effective when entered as provided in Rule 5003. The reference in Rule 58 F.R.Civ.P. to Rule 79(a) F.R.Civ.P. shall be read as a reference to Rule 5003 of these rules."

Bankruptcy Rule 9021 (1990).

A written order was never submitted as required by Bankruptcy Rule 9021, thus, there is no order which could have been appealed by any of the parties to the agreement or other creditors of the case. Further, there is no final order which can be enforced. An undocketed order cannot be enforced or appealed. *Matter of Ameri-*

*can Precision Vibrator Co.,* 863 F.2d 428, 429 (5th Cir.1989).

■ 3. Further, at the October 1987 hearing, the Court only approved what amounted to a consent decree of the parties as to the use of cash collateral. Because the parties entered into an agreement short of a hearing, the Court never heard or considered the issues underlying the positions of the parties vis-a-vis the cash collateral, such as liens on the rents, adequate protection or other issues presented in a litigated hearing under 11 U.S.C. § 363. Therefore, even if an order had been entered, the doctrine of res judicata does not bar the Court to consider the merits of the issues presented. *In re Artishon,* 39 B.R. 890 (Bankr.D.Minn.1984).

As analyzed above, the ruling made in open court in October 1987 in the First Bankruptcy Case which approved the agreement between the Bank and Park Associates on the use of cash collateral is not binding on the Trustee's administration of Debtor's property in this Second Bankruptcy Case.

> Did the Bank take such affirmative action in the First Bankruptcy Case, or at any time thereafter, sufficient to exercise the Assignment of Rents agreement against the Debtor, and thus, perfect its interest in the rents prepetition as to the Debtor?

■ 1. The Assignment of Rents agreement is a collateral assignment of rents as stated by counsel for the Bank at the hearing in San Antonio on the Bank's Motion to Restrict Trustee's Use of Cash Collateral in the Debtor's case. The Park Associates, as Assignor, executed the Assignment of Rents for the benefit of MBank Austin, N.A., as Assignee. The Assignment and the Deed of Trust (With Security Agreement) contemplate that Park Associates will not take any action to impair the validity of the Bank's lien and security interests securing the payment of the $5.2 million note.

2. In order to exercise a collateral assignment of rents, courts in Texas "have followed the common law rule that an as-

signment of rentals does not become operative until the mortgagee obtains possession of the property, or impounds the rents, or secures the appointment of a receiver, or takes some other similar action." *Taylor v. Brennan*, 621 S.W.2d 592, 594 (Tex. 1981); *see also Matter of Village Properties*, 723 F.2d 441, 443 (5th Cir.1984); *In re Lake Austin Centre Joint Venture*, 106 B.R. 106, 108 (Bankr.W.D.Tex.1989). Further, the phrase "or takes some other similar action" has been construed to include action with similar "substantive thrust—diligent action by the mortgagee which demonstrates that he would probably have obtained the rents had bankruptcy not intervened." *Matter of Village Properties*, 723 F.2d at 446. The *Village Properties* court determined that actions qualifying to perfect a security interest did not require actual possession of the rents and could consist of actions such as filing a petition to sequester the rents or by mere notice under 11 U.S.C. § 546(b). The Fifth Circuit later held a motion to lift stay sufficient to perfect an interest in rents; however, the perfection only operates prospectively as to rents accruing after the date of the motion. *In re Casbeer*, 793 F.2d 1436, 1443–44 (5th Cir.1986); *see also Lake Austin Centre Joint Venture*, 106 B.R. at 108. Also, a motion to prohibit use of cash collateral has been held sufficient to perfect a creditor's secured interest in rents. *In re Oak Glen R–Vee*, 8 B.R. 213 (Bankr.C.D.Cal.1981).

Following this, the Bank's filing a motion under 11 U.S.C. § 363 operated as a Bankruptcy Code-created remedy to perfect its interests in the rents from the Property as would a notice given under 11 U.S.C. § 546(b). However, this perfection expired with the foreclosure of the Property in December 1987 because the Property was no longer property of the estate. As such, any perfection created by means of the Bankruptcy Code became ineffective as to third parties not a party to the First Bankruptcy Case (such as the Trustee in the Second Bankruptcy Case).

3. The Assignment of Rents granted Park Associates a limited license to collect rents until a default might occur as defined under the provisions of the document.

Revocation of the license occurred when the Debtor in the First Bankruptcy Case defaulted under the terms of the financing documents but could not be exercised due to the imposition of the automatic stay. Under *Village Properties, Casbeer,* and *Taylor v. Brennan,* the Bank's perfection of its security interest by filing a motion under Section 363 in the First Bankruptcy Case achieved the same effect as would revocation of the license: after the date of the motion, as to that estate, the Bank was secured by any rents later accruing from the Property. However, as stated above, the subsequent foreclosure of the Property by the second lienholder (the Debtor) terminated the Bank's perfected security interest in the rents—a perfection created by means of the Bankruptcy Code.

4. The Bank filed its Motion to Prohibit Cash Collateral in the First Bankruptcy Case on June 23, 1987. Although no written order was entered into the docket of the case, the parties to the agreement apparently acted in accordance with the terms of the agreement without further complaint made known to the Court. Pursuant to "the agreement", Park Associates entered into a contract with an independent management company to operate the Property. The management company collected rents and paid expenses based upon a budget approved by the Bank. Further, the Bank approved special expenses when necessary to be paid out of the Property's cash flow; cash flow which was then remitted to the Bank net of all expenses. Shortly after working out this "agreement", however, the second lienholder (the Debtor in this Second Bankruptcy Case) obtained relief from the automatic stay and foreclosed his second lien. Thus, the Park Associates was no longer owner of the Property. Notwithstanding this change of ownership, apparently the same management company continued to manage the property, pay bills and remit net cash flow to the bank. No evidence was introduced at this hearing to show the nature or terms of the contractual arrangements under which the new owner, the management company and the Bank

conducted business for this period of approximately 2½ years.

5. All parties have, in effect, acquiesced to the collection of rents and payment of expenses by a management company and the payment of the net income to the Bank. This Court is left to guess whether the management company acted as agent for the Bank (thus giving it "possession" of the rents), or as agent for the Debtor. Although not established in the case at bar, under some set of facts this arrangement could have resulted in an absolute assignment of rents prior to the filing of this Second Bankruptcy Case. *See e.g., In re Tripplet,* 84 B.R. 84 (Bankr.W.D.Tex.1988), *In re Fry Road Associates, Ltd.,* 66 B.R. 602 (Bankr.W.D.Tex.1986).

■ 6. Given that the foreclosure of the Property extinguished the Bank's Code-created perfection, the Bank must establish alternate grounds for perfection, such as by "possession" of the rents. The record in this file does not reflect that the collections of rent were in the "possession" of the Bank. Other documents considered by this Court include motions for relief from stay, motions to prohibit use of cash collateral and the Bank's proof of claim in this case. None of these documents claim any perfection by possession or through any form of assignment or in any manner by any agreement between the Debtor and the management company.

■ 7. A proof of claim is "deemed allowed" unless objected to. 11 U.S.C. § 502(a). Bankruptcy Rule 3001(f) states that "a proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." The Trustee has objected to the claim of the Bank to the extent that the Bank asserts a perfected security interest in the rents received by the Debtor (or its management company) prior to the Bank's efforts to perfect its security interest in this Second Bankruptcy

Estate. Further, the Trustee's evidence presented at the hearing on the motion at issue included the undisputed fact that no court order was ever entered in the First Bankruptcy Case, that the original owner of the Property lost its interest in the Property by the Property's foreclosure, an event occurring after the original management agreement was entered into by the parties, and that no proof of claim or other pleading was filed by the Bank in this case asserting a perfected security interest in the rents by any form of "possession" or "absolute assignment". The Trustee's evidence is sufficient to rebut the prima facie effect of the Bank's proof of claim and to require it to meet its ultimate burden of persuasion. *See generally* 3 COLLIER ON BANKRUPTCY ¶ 502.01 at 502–14 (15th ed. 1990).

The Bank produced no evidence by testimony or exhibits from its files, from the management company, or even through testimony of the Debtor illuminating the contractual relationship between the parties at the time the Second Bankruptcy Case was filed or evidencing the Bank's right to possess the rents from the Property. Therefore, the Court determines that the Bank has not shown it holds a perfected security interest in the two months' rent from the Property which are at issue. The Bank's perfection dates from June 8, 1990 when it filed its Motion to Restrict the Trustee's Use of Cash Collateral in this Second Bankruptcy Case. This follows the Fifth Circuit's pronouncement that perfection of a security interest in a bankruptcy case is effective on the date the relevant pleading is filed and that "perfection does not relate back to a time before bankruptcy for the purpose of entitlement to rents." *In re Casbeer,* 793 F.2d 1436, 1443 (5th Cir.1986).[1]

CONCLUSION

The Court determines that it is not bound by the ruling entered in the First Bank-

---

**1.** This Court notes that outside of bankruptcy, it would appear that the creditor could garnish or attach the rents, including funds on hand. In such instance the Bank could be perfected at the time of its taking affirmative action, even as to

the rents on hand. This court believes that the *Casbeer* opinion may have misconstrued the decision in *Taylor v. Brennan,* 621 S.W.2d 592 (Tex.1981). *See In re Landing Associates Ltd.,* 122 B.R. 288, 295 n. 6 (Bankr.W.D.Tex.1990).

ruptcy Case in October 1987 which approved the parties' agreement on use of cash collateral because there was no enforceable order entered in that case with any res judicata effect to this Court's reconsideration of the issues presented at bar. Further, the Court finds that Bank did not meet its burden of showing that it took sufficient action in the First Bankruptcy Case to have a perfected security interest in the rents. The record reflects that the Bank's only actions to perfect its interest in rents include filing a motion to prohibit Debtor's use of cash collateral (and this perfection as a Bankruptcy Code-created remedy was extinguished by the foreclosure of the Property) and collecting the net rents from the Property (via a management company) pursuant to an oral agreement on that motion from October 1987 until May 1990, uninterrupted by the foreclosure of the Property in December 1987. The Court finds that the Bank's actions do not establish a prima facie case of perfection by possession. It is thus undisputed that, as to the estate of this Second Bankruptcy Case, the two months of rents held by the management company at the time of filing of this second case are property of this estate and subject to the turnover requirements of the Code to be exercised by the Trustee.

A separate order of even date herewith will be entered evidencing this Court's ruling denying the Bank's Motion To Restrict Use of Cash Collateral and requiring that the management company turnover funds, representing rents from the Property for May and June of 1990, to the Chapter 7 Trustee, Mr. Lowe.

IT IS SO ORDERED.