**In re Robert B. WORRELL and Joanne M. Worrell, Debtors.**

**Bankruptcy No. 185/00443.**

United States Bankruptcy Court, C.D. Illinois.

March 26, 1986.

---

4. Even if these two items were considered expenses under § 506(c) they would not be allowable as the primary benefit was to the debtors.

Carl F. Reardon, East Peoria, Ill., for debtors.

L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., for U.S.

## DECISION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

The debtors in this proceeding and the debtors in *In re: Wayne R. Lindsey and Margaret A. Lindsey*, 59 B.R. 168 (Bankr. C.D.Ill.1986), both filed Motions for Apportionment. As the legal issues are identical, and the facts are similar, the debtors and the creditor, the United States of America through the Farmers Home Administration, agreed to consolidate the hearings on the separate motions.

The facts in both cases are uncontested. In the fall of 1984, the debtors in each case (hereinafter jointly referred to as "debtors", or individually as "Worrell" or "Lindsey") were engaged in farming, operating their own farms independent of each other. Worrell had planted 12 acres of winter wheat and Lindsey had planted 210 acres of winter wheat. On March 1, 1985, Worrell filed a Chapter 11 proceeding in bankruptcy, and on April 26, 1985, Lindsey filed a similar proceeding. At the time the debtors filed their proceedings, the winter wheat crops were not ready for harvest and Worrell's crop had a "green chop" value of $535.00 and Lindsey's crop had a "green chop" value of $4,431.00. "Green chop" value is the value of a crop if it is prematurely harvested and used to feed

cattle. Both debtors elected to let the winter wheat crop grow to maturity and not harvest it for its "green chop" value. The winter wheat crops were harvested in July of 1985 and sold, resulting in gross receipts of $3,513.47 for Worrell and $10,276.00 for Lindsey.[1] By permitting the winter wheat crops to grow to maturity, debtors lost the opportunity to plant spring crops.

Debtors filed Motions for Apportionment, requesting that this court enter an order finding that the winter wheat crops had only a nominal value at the time the bankruptcy petitions were filed, and ordering that a portion of the proceeds received for the winter wheat crops be payable to each of them and a portion be payable to the creditor. Debtors seek to recover the following expenses incurred in connection with their winter wheat crops:

| ITEM | WORRELL | LINDSEY |
|---|---|---|
| 1. The value of his time in inspecting the crop | $ 120.00 | $ 210.00 |
| 2. The use of his land | 1,500.00[2] | 5,250.00[2] |
| 3. Harvesting expense | 288.00 | 3,530.40 |
| 4. Hauling | 89.00 | 497.28 |
| 5. Insurance | — | 420.00 |
| 6. Storage | — | 925.54 |
| 7. Cost of diverting acreage | — | 378.00 |
| 8. Interest to CCC | — | 373.00 |
| Total | $1,997.00 | $11,584.22 |

After the hearing on the motions, based upon the decision in *In re J. Catton Farms, Inc. v. First National Bank of Chicago*, 779 F.2d 1242 (7th Cir.1985)[3] the debtors conceded the creditor was entitled to the increased value of the crops from the date of the filing of their proceedings to the date of harvest and sale. The debtors still maintain that pursuant to Sections 552(b) and 506(c) the creditor should be charged with the expenses associated with maintaining and harvesting the winter wheat crops.

---

1. Lindseys' actual gross receipts were $20,534.00 but he was renting his land and had to pay 50%, or $10,267.00 to his landlord for rent.

2. Worrell owned his 12 acres, while Lindsey rented his 210 acres. Both contend by not "green chopping" their winter wheat crop and planting a spring crop they lost $1500.00 and $5250.00 respectively which they should be able

to charge as expense against the proceeds of winter wheat crop.

3. This decision was followed by Judge Lessen in *In re Randall*, 58 B.R. 289 (Bankr.C.D.Ill.1986), a bankruptcy proceedings filed in the United States Bankruptcy Court for the Central District of Illinois.

The creditor takes the position that although the debtors may recover their expenses in maintaining and harvesting the winter wheat crops, the debtors have overstated the amounts they should receive.

Section 552(b) provides that if a debtor and a creditor entered into a security agreement before the commencement of the case, which grants a security interest to products of the collateral, then such security interest extends to such products of the collateral acquired by the estate after the commencement of the case to the extent provided by the security agreement or applicable nonbankruptcy law "except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise". The meaning of the exception was explained in *In re J. Catton Farms, Inc., v. First National Bank of Chicago, supra,* where, at page 1246 the court stated:

"The equity exception is meant for the case where the trustee or debtor in possession uses other assets of the bankrupt estate *(assets that would otherwise go to the general creditors)* to increase the value of the collateral. See, e.g., *In re Village Properties, Ltd.,* 723 F.2d 441, 444 (5th Cir.1984). Suppose a creditor had a security interest in raw materials worth $1 million, and the debtor invested $100,000 to turn those raw materials into a finished product which he then sold for $1.5 million. The proceeds of this sale (after deducting wages and other administrative expenses) would be added to the secured creditor's collateral unless the court decided that it would be inequitable to do so—as well it might be, since the general creditors were in effect responsible for much or all of the increase in the value of the proceeds over the original collateral." (Emphasis added)

The facts of the case before this court do not fall within the scope of the exception. The debtors did not use other assets that would otherwise go to the general creditors to increase the value of the collateral. The value of the debtors' time in inspecting the crops quite obviously does not involve the use of the debtors' assets. The land, although it was used in the general sense, was not consumed, so that it was not available for other creditors. The other expenditures admittedly used the debtors' assets but these were primarily cash expenditures in the nature of administrative expenses that should be considered under Section 506(c), rather than an incorporation of assets into the collateral so as to increase its value.

Section 506(c) would permit the debtors to recover from the proceeds of the winter wheat crops

"... the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit ..."

to the creditor. The threshold question is whether all of the alleged expenses are in fact expenses. The legislative history to Section 506(c) provides in part as follows:

"Any time the ... debtor in possession *expends money* to provide for the reasonable and necessary cost and expenses of preserving or disposing of a secured creditor's collateral, the ... debtor in possession is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party." (Emphasis added) [124 Cong.Rec. H 11,095 (Sept. 28, 1978); S 17,411 (Oct. 6, 1978).]

The value given to the debtors' time in inspecting the crops (Worrell $120.00 and Lindsey $210.00) does not involve an actual expenditure of money. Therefore, those amounts are not allowable expenses under § 506(c). The debtors also seek to charge as expenses, amounts for the use of the land (Worrell $1500.00 and Lindsey $5,250.00). Worrell owns his 12 acres. Lindsey rents his land. Their contention is that they are entitled to recover the difference between the "green chop" value of the crops and the value of spring crops, had they "green chopped" and planted a spring crop. The choice not to "green chop" the winter wheat crops was solely theirs. Furthermore, neither debtor expended the amounts they are seeking for

the use of the land. Worrell owns his land and paid nothing for its use. Lindsey rented his land, but as previously indicated he had already paid his rent of $10,267.00 and is seeking to charge the creditor with an additional $5,250.00. Therefore, the amounts associated with the land use are not allowable expenses under § 506(c).

█ In order for the creditor to be charged with costs and expenses under § 506(c), the debtors must show that the costs and expenses were (1) reasonable, (2) necessary in preserving or disposing of the winter wheat crop, and (3) that the creditor benefited from such costs and expenses. *In the Matter of Trim-X*, 695 F.2d 296, (7th Cir.1982); *In the Matter of Combined Crofts Corporation*, 54 B.R. 294 (Bkrtcy. 1985).

In determining whether a farm debtor's costs are reasonable, the court in *In the Matter of Combined Crofts Corporation, supra,* indicated that reasonableness is often measured by the amount which the secured creditor would necessarily have expended in foreclosing on the collateral in its own behalf and looked for evidence which would show that the cost of maintaining and disposing of the collateral over a ten month period as chosen by the farm debtor were comparable to the costs and expenses which his creditor would have borne if the collateral had been earlier abandoned, or that the farm debtor's chosen method of liquidation resulted in a higher net return in the sale of the collateral than would have resulted if his creditor had been allowed to promptly liquidate the collateral.

█ Applying these principles to the debtors' expenses in the cases before this court, the creditor would have had to incur Worrell's harvesting and hauling expenses, and Lindsey's harvesting, hauling, storage expense, and insurance expenses in order for the creditor to obtain the full value of the crops. Those expenses were reasonable. Lindsey's other expenses dealing with the cost of diverted acreage and the interest to the Commodity Credit Corporation were not costs that would be comparable to the costs and expenses which the creditor would have incurred in maintaining and harvesting the crops, and are not reasonable.

The next factor to be considered is whether the expenses were necessary. *In the Matter of Trim-X, Inc., supra;* and *In the Matter of Combined Crofts Corporation, supra,* the courts held if the collateral could have been turned over to the creditor but was not because of the acts of the debtor, the expenses were not necessary. In the cases before this court, at the time that the debtors filed their petitions the crops were not ready for harvesting. It was to the debtors' and the creditor's best interest to allow the winter wheat crops to mature and then harvest them. Under these circumstances, those costs found above to be reasonable, are also found to be necessary.

The third factor to be considered by this court involves benefit. For the purposes of § 506(c) it must be shown that the costs or expenses were expended primarily to benefit the creditor, and directly benefited the creditor. Indirect, uncertain, or speculative benefits are not recoverable. Incidental benefits which accrue to the creditor are generally not recoverable. *In the Matter of Combined Crofts Corporation, supra.* In Worrell, the creditor did receive the direct and primary benefit of the harvesting expense and the hauling, and in Lindsey it received the direct and primary benefit of the insurance, harvesting, hauling, and storage expenses. In both of these proceedings the farming operations were continued which permitted the debtors to successfully reorganize. The benefit that the creditor received through the debtors' inspection of the crops and through the use of the debtors' land,[4] and from the expenses incurred by Lindsey in diverting acreage, and paying interest to Commodity Credit Corporation was all indirect, if any,

---

**4.** Even if these two items were considered expenses under § 506(c) they would not be allowable as the primary benefit was to the debtors.

with the direct and primary benefit of those expenses accruing to debtors to permit them to reorganize to keep their farms.

I, therefore, hold that the debtor Worrell can recover from the creditor as reasonable, necessary, and beneficial costs and expenses the following:

| Harvesting expense | $ 288.00 |
| Hauling expense | 89.00 |
| Total | $ 377.00 |

And the debtor Lindsey can recover from the creditor as reasonable, necessary, and beneficial costs and expenses the following:

| Insurance | $ 420.00 |
| Harvesting expense | 3,530.40 |
| Hauling | 497.28 |
| Storage | 925.54 |
| Total | $5,373.22 |

As to the remaining expenses of either debtor, I hold those to be unnecessary, unreasonable, and of no benefit to the creditor.

Worrell is entitled to retain from the proceeds the sum of $377.00 and should pay to the creditor the sum of $3,136.47. Lindsey is entitled to retain from the proceeds the sum of $5,373.22 and should pay to the creditor the sum of $4,893.78.

This Decision is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

Nelson T. Hensley, Houston, Tex., for debtor.

Thomas S. Henderson, Sheinfeld, Maley & Kay, Houston, Tex., for Bay Area Bank & Trust.