In re NATIONAL REAL ESTATE LIMITED PARTNERSHIP–II, Debtor.

NATIONAL REAL ESTATE LIMITED PARTNERSHIP–II, Plaintiff,

v.

CONSOLIDATED CAPITAL PROPERTIES, Defendant.

Bankruptcy No. 87–05232.
Adv. No. 88–0390.

United States Bankruptcy Court,
E.D. Wisconsin.

Aug. 23, 1989.

Patrick B. Howell, Milwaukee, Wis., for plaintiff-debtor.

Paul S. Medved, Milwaukee, Wis., for defendant.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

This adversary proceeding evolves from this court's decision in *In re National Real*

*Estate Limited Partnership–II,* 87 B.R. 986 (Bankr.E.D.Wis.1988). That decision, rendered on June 16, 1988, granted the motion of Consolidated Capital Properties ("ConCap") for relief from the automatic stay. It enabled ConCap, as beneficiary under a deed of trust, to complete foreclosure on the Round Tree Apartments, a 228–unit apartment complex owned by the debtor and located in San Antonio, Texas. Certain "loose ends" were left in its wake.

On May 26, 1988, subsequent to the filing of this chapter 11 case [1] and while the earlier decision was under advisement, ConCap served the debtor with a "Notice Of Claim To Rents, Profits And Similar Items As Cash Collateral Pursuant To § 546(b)." [2] The debtor segregated all rents obtained after receipt of this notice, totalling $61,765.33 ("segregated funds").

On August 2, 1988, a sheriff's auction was conducted. ConCap bid $3,500,000 and acquired legal title to the property. Because ConCap filed a proof of claim for $3,739,358.99 in this chapter 11 case, it maintains it has the right to assert a deficiency claim against the debtor's estate for the resulting shortfall.

In December of 1986, nearly a year before this chapter 11 case was filed, the debtor commenced a state action in Waukesha County Circuit Court against ConCap for injunctive relief, rescission and damages, alleging fraud, misrepresentation and mutual mistake of fact. The debtor asserted that when ConCap sold the apartment complex to the debtor in the Fall of 1981, it agreed to sell and deliver a "legal lot" but failed to do so. On June 22, 1987, the Honorable Robert T. McGraw, presiding judge in the state court action, granted to the debtor a temporary injunction enjoining

1. The debtor filed its chapter 11 petition on November 30, 1987.

2. 11 U.S.C. § 546(b) provides:
   "(b) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such

perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement."

ConCap from proceeding with its foreclosure suit. Judge McGraw required the debtor, as a condition of the temporary injunction, to deposit $41,800, in lieu of a bond, with the Waukesha County Clerk of Court "to be disbursed by the Clerk of Court pursuant to the further order of this Court." On August 31, 1987, Judge McGraw dissolved the temporary restraining order, concluding that there were adequate legal remedies available to the debtor. The remainder of the debtor's suit is still pending, and no order has as yet been made by Judge McGraw as to disbursement of the $41,800 deposit.

The following issues remain unresolved:

1. Who is entitled to the segregated funds totalling $61,765.33?

2. Does ConCap hold an unsecured deficiency claim in the chapter 11 proceedings?

3. Does this court have jurisdiction to decide entitlement to the $41,800 cash deposit, and if so, should this court exercise that jurisdiction or abstain in favor of the Waukesha County Circuit Court? [3]

## ENTITLEMENT TO SEGREGATED FUNDS

ConCap and the debtor have stipulated that the segregated funds are entirely attributable to rents from the Round Tree Apartments. ConCap is not seeking recovery for any rents received by the debtor from this apartment complex before May 26, 1988. However, ConCap claims it holds a perfected security interest in the segregated funds, that all the segregated funds received on and after May 26, 1988 constitute its cash collateral by virtue of its § 546(b) notice and that the debtor's claim for recovery from the segregated funds is limited to "legitimate, properly documented property management expenses incurred between May 26, 1988 and August 2, 1988." ConCap specifically objects to any recov-

ery by the debtor for child care expenses [4] and partnership expenses.

The debtor maintains that ConCap has no right to any portion of the segregated funds. Alternatively, if it is found that ConCap has a perfected security interest, the debtor argues that it is entitled to a substantial portion of these funds as reasonable and necessary expenses incurred for the preservation of the property. As part of its claim, the debtor seeks recovery for child care expenses and for its partnership expenses.

Property interests are created and defined by state law. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In Texas, where the apartment complex is located, a transfer of an interest in real property, including rental property, is perfected when the appropriate documents are timely filed in the deed records of the county where the real property is situated. Averch, "Revisitation of the Fifth Circuit Opinions of *Village Properties* and *Casbeer:* Is Post–Petition 'Perfection' of an Assignment of Rents Necessary to Characterize Rental Income as Cash Collateral?," 93 Com.L.J. 516, 527 (1988). On September 15, 1981, ConCap executed and filed in the official public records of real property of Bexar County, Texas, a deed of trust, assignment of rents and security agreement and a separate conditional assignment of rents and leases covering the Round Tree Apartments. Although ConCap's lien was validly perfected, under Texas law, its right to collect the rents became operative only upon ConCap obtaining possession of the property, impounding the rents, securing the appointment of a receiver or "taking some other similar action." *Taylor v. Brennan*, 621 S.W.2d 592, 594 (Tex.1981). That "other similar action" occurred when ConCap's § 546(b) notice was received by the debtor on May 26, 1988. Until then, ConCap was not entitled to recover any rents, and the debtor was free to use them. *In re Village Properties, Ltd.*, 723 F.2d

---

3. The first two issues clearly are core proceedings under 28 U.S.C. § 157(b) and subject to bankruptcy court jurisdiction.

4. The debtor had operated a licensed child care center located on the premises of its apartment complex which, for an additional fee, was made available for children of tenants.

441, 443 (5th Cir.1984), cert. denied, 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823; *In re Casbeer*, 793 F.2d 1436, 1442 (5th Cir. 1986); *In re Tripplet*, 84 B.R. 84, 89 (Bankr.W.D.Tex.1988).

■ It is the debtor's position that Con-Cap has no perfected interest in the segregated funds and that the § 546(b) notice utilized by ConCap was not an effective method of perfecting its interest in rents. That argument was rejected in *In re Casbeer*, which held that the perfection "relates back to a time before bankruptcy for the purpose of § 546(b); perfection does not relate back to a time before bankruptcy for the purpose of entitlement to rents;" 793 F.2d at 1443.

A conditional assignment of rents in Texas, such as that presented to this court in the case at bar, serves only as a form of collateral, and the assignee is not entitled to the rents until it properly asserts its right to receive them. *Taylor v. Brennan*, 621 S.W.2d 592 at 593–94. ConCap properly perfected its security interest in the rents upon service of its § 546(b) notice on the debtor. This is an acceptable method of affirmative action for recovery of rents in Texas within the meaning of *Taylor v. Brennan*. *In re Casbeer, In re Village Properties Ltd., In re Tripplet*, 84 B.R. 84, 89 (Bankr.W.D.Tex.1988).

There is authority to the contrary. *In re Prichard Plaza Associates Limited Partnership*, 84 B.R. 289 (Bankr.D.Mass.1988); *In re Kearney Hotel Partners*, 92 B.R. 95 (Bankr.S.D.N.Y.1988); *In re Gotta*, 47 B.R. 198 (Bankr.W.D.Wis.1985).[5] However, the majority of cases agree with *Casbeer* and *Village Properties Ltd. In re Gelwicks*, 81 B.R. 445, 448 (Bankr.N.D.Ill.1987); *In re Morning Star Ranch Resorts*, 64 B.R. 818 (Bankr.D.Colo.1986); *In re Sampson*, 57 B.R. 304 (Bankr.E.D.Tenn.1986); *Consolidated Capital Income Trust v. Colter, Inc.*, 47 B.R. 1008 (D.Colo.1985); *In re Fluge*, 57 B.R. 451 (Bankr.D.N.D.1985).

Under *Butner*, what is most crucial to a determination of this issue is the applicable state law. This court must therefore analyze this matter in light of the controlling Texas authority as embodied in *Casbeer, Village Properties, Ltd., Tripplet* and *Taylor v. Brennan*. *See also In re Oliver*, 66 B.R. 426 (Bankr.N.D.Tex.1986). Consequently, it concludes that ConCap properly perfected its interest in post-petition rents accruing after service of its § 546(b) notice upon the debtor on May 26, 1988.

From that time forward, all such rents, comprised of the segregated funds, became ConCap's cash collateral by virtue of §§ 363(a) and 552(b) of the Bankruptcy Code.[6]

■ This leads to the next issue of whether any portion of the debtor's expenses are recoverable against the segregated funds. 11 U.S.C. § 506(c) of the

---

**5.** Although *Gotta* reached a different result from *Casbeer, Village Properties* and *Tripplet,* the court specifically discussed *Village Properties* and acknowledged that Wisconsin law differs from Texas law with respect to collection of rents by a mortgagee. *In re Gotta,* 47 B.R. at 203.

**6.** Cash collateral is defined in § 363(a) as follows:

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, *rents,* or profits of property *subject to a security interest as provided in section 552(b)* of this title, whether existing before or after the commencement of a case under this title. (Emphasis added.)

§ 552(b) deals with the post-petition effect of a security interest and permits the court to pre-serve valid security interests in rents. It provides:

(b) Except as provided in section 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, *rents,* or profits of such property, then such security interest extends to such proceeds, product, offspring, *rents,* or profits *acquired by the estate after the commencement of the case* to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. (Emphasis added.)

Bankruptcy Code provides that the debtor "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." This provision was intended by Congress to codify case law expressing the equitable principle that a lienholder may be charged with the reasonable costs and expenses incurred by the debtor in order to preserve the property subject to the lien to the extent the lienholder derives a benefit therefrom. 3 *Collier on Bankruptcy* § 506.06 (15th Ed.1987).

§ 506(c) has been interpreted by the Seventh Circuit in *In re Trim–X Inc.*, 695 F.2d 296 (7th Cir.1982), to mean that a party seeking recovery must demonstrate that the sought after expenses were: (1) reasonable, (2) necessary and (3) beneficial to the secured creditor. *In re Trim–X Inc.* also declares that a bankruptcy court must carefully explain its rationale in arriving at "reasonable" expenses. The burden is upon the party seeking to recover these expenses to demonstrate the existence of such benefits. 3 *Collier on Bankruptcy* § 506.06 (15th Ed.1987).

The expenses sought by the debtor shall now be analyzed in the light of these principles.

## ON–SITE PERSONNEL EXPENSES

### (Amount Claimed: $9,687.15)

The testimony failed to establish that two maintenance personnel (Abram Benavides and Robert Garcia) performed any services at the Round Tree Apartments. Michelle Loper, property manager, testified that she did not know either person, and if they had worked at this apartment site, she would have known them. These expenses ($315.78) are therefore excluded. Part of the wages paid to Ms. Loper and Lisa Gabbard, assistant property manager, were termination benefits for vacation and holiday pay totalling $1,588.43 and are disallowed. These expenses accrued mainly before May 26, 1988 and produced no measurable benefit to the property. Another part of the debtor's claim for recovery relates to services performed before May 26, 1988 by debtor's employees but paid as wages after May 26, 1988. Because those services, totalling $1,295.35, occurred before May 26, 1988, they also are excluded from the debtor's claim. The rest of the claimed on-site personnel expenses ($6,487.59) is allowed.

## OFF–SITE PERSONNEL EXPENSES

### (Amount Claimed: $3,506.97)

Requested reimbursement for salary payments to Patrick Roberts and Denise Tolan, totalling $1,514.57, is disallowed. Mr. Roberts was the controller for National Development and Investments, Inc., a company which syndicated several limited partnerships in Texas, including the debtor. Ms. Tolan was the regional property manager for all of the Texas properties owned by these limited partnerships. The testimony failed to establish that either Mr. Roberts or Ms. Tolan performed any services which directly benefited the Round Tree Apartments. Their services were not necessary to the day-to-day operations performed for this property. "Indirect, uncertain or speculative benefits are not recoverable." *In re Worrell*, 59 B.R. 172, 175 (Bankr.C.D.Ill.1986).

The other off-site expenses were normal support operations and are allowed. They included such services as clerical, data processing, bookkeeping and accounting and were of the type which ConCap would have expected to incur for the ongoing operations of the apartment complex. The formula devised by the debtor for allocating these costs (total apartment units in the Round Tree Apartments divided by total apartment units owned by all the limited partnerships syndicated by National Development and Investments, Inc.) is reasonable. Recovery is therefore allowed in the sum of $1,992.40.

## PAID PROPERTY EXPENSES

### (Amount Claimed: $17,858.47)

All expenses incurred before, but paid on or after May 26, 1988, totalling $8,194.57, are disallowed. They are chargeable

against the pre-May 26, 1988 rentals totalling approximately $40,000 and currently being held by the debtor.

All expenses incurred and paid on or after May 26, 1988, totalling $9,663.90, are allowed, including the following expenses specifically challenged by ConCap:

First Wisconsin National Bank ($454.99 for payroll services)

Horton Horticulture, Inc. ($1,651.42 for lawn maintenance and flowers)

Southwestern Bell ($136.50 for telephone services)

Child Care services ($1,588.97)

Promotional services ($251.21 to LTD Graphics and $253.31 to Printcraft)

These costs were reasonable, necessary and beneficial to the preservation and maintenance of the property. The most controversial of the disputed items is the child care services. The court recognizes that ConCap now subcontracts these services, in contrast to the self-operation method used by the debtor, and that this has proven to be more economical. Nonetheless, these particular services incurred by the debtor were not to generate a profit, but to make the premises more attractive to existing and prospective tenants. They are therefore allowed.

### UNPAID EXPENSES

(Amount Claimed: $23,003.85)

Of this amount, $6,044.26 was incurred before May 26, 1988 and is disallowed except to the extent of $798.74 for building materials [7] and $1,505 for tenant locator services [8], which provided direct post-May 26, 1988 benefits to the property. All unpaid expenses incurred on or after May 26, 1988 are allowed in the sum of $13,789.59.[9]

---

**7.** Expenses for building materials, consisting of countertops, doors, etc., are as follows:

| CREDITOR | AMOUNT DUE |
| --- | --- |
| Consolidated Maintenance Supply | $125.34 |
| Double "A" Services | $120.00 |
| Unlimited Parts and Supplies | $542.71 |
| Winn's | $ 10.69 |
| TOTAL | $798.74 |

**8.** Expenses for tenant locator services are as follows:

The total of all allowed unpaid expenses therefore is $16,093.33.

### PARTNERSHIP EXPENSES

(Amount Claimed: $1,842.84)

All of debtor's partnership expenses are disallowed. It would be unfair to require ConCap to pay any portion of these costs, which provided no direct benefit to the Round Tree Apartments. Incidental benefits which accrue to the secured claimant are generally not chargeable under § 506(c). *Matter of Combined Crofts Corp.*, 54 B.R. 294, 297 (Bankr.W.D.Wis. 1985); *In re Worrell*, 59 B.R. 172 (Bankr.C. D.Ill.1986).

### SUMMARY OF EXPENSES RECOVERABLE FROM SEGREGATED FUNDS

$34,237.22 is awarded to the debtor as reimbursement for reasonable and necessary expenses which directly benefited the property during the post–§ 546(b) notice period. The balance of the segregated funds, including all accrued interest, is awarded to ConCap.

### CONCAP'S DEFICIENCY CLAIM

§ 1111(b) of the Bankruptcy Code affords special treatment to the holder of a nonrecourse secured claim where the value of the collateral is less than the debt. In chapter 11, regardless of whether a claim is nonrecourse by agreement or applicable law, an undersecured creditor's claim is allowed under § 1111(b) as if that creditor had recourse against the debtor, thereby giving the creditor an unsecured deficiency claim, with the following two exceptions:

| CREDITOR | AMOUNT DUE |
| --- | --- |
| Referral Service | $ 660.00 |
| Apartment Locators | $ 670.00 |
| Your Apartment Finders | $ 175.00 |
| TOTAL | $1,505.00 |

**9.** Although the debtor claimed unpaid expenses for this period in the amount of $16,959.59, an adjustment was made in the water bill to reflect charges which accrued prior to May 26, 1988, resulting in a $3,170 reduction.

1. Where the class of which such claim is a part elects application of § 1111(b)(2), thereby resulting in the entire claim being treated as a secured claim ("election option"); [10] or

2. Where the property securing the claim is sold under § 363 of the Code or is to be sold pursuant to the terms of the plan ("sale of collateral").

▪ The debt owing to ConCap is a nonrecourse obligation under the terms of the promissory note dated September 15, 1981. The question is whether the deficiency claim of ConCap should be treated as a recourse claim pursuant to § 1111(b) where ConCap obtained relief from the automatic stay, foreclosed upon its security interest and became the owner of the property by successfully bidding $3,500,000 at the sheriff's auction.

This issue was recently addressed in *Matter of Tampa Bay Associates, Ltd.*, 864 F.2d 47 (5th Cir.1989). The nonrecourse secured lender argued that its foreclosure during the pendency of the bankruptcy proceedings in *Tampa Bay Associates* did not deprive it of § 1111(b) status because it was not a sale under § 363 of the Code or a sale pursuant to the terms of a plan and therefore did not fit the "sale of collateral" exception. The Fifth Circuit rejected that argument, declaring that Congress intended by § 1111(b) to overrule the harsh result reached in *In re Pine Gate Associates, Ltd.*, 2 B.C.D. 1478 (Bankr.N.D. Ga.1976),[11] and protect the nonrecourse, undersecured creditor where that creditor is not given an opportunity to purchase the collateral at a sale or where the debtor intends to retain the property and not repay the debt in full. *See also Matter of DRW Property Co. 82*, 57 B.R. 987 (Bankr. N.D.Tex.1986).

The "sale of collateral" exception to § 1111(b) exists where a sale takes place because the nonrecourse, undersecured

lender may bid at the sale up to the full amount of its claim and thereby protect itself. Klee, "All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code," 53 Am.Bankr.L.J. 133, 161; 3 *Norton Bankr.L. & Prac.*, (1986 & Supp.1988), § 57.02; *Collier Bankr. Prac. Guide* § 91.06 (1988). That is precisely what happened in the instant case. ConCap bid $3,500,000 and became the owner of the Round Tree Apartments. § 1111(b) was never intended to give undersecured lenders any additional rights under state law.

"The safeguards placed in the Code for non-recourse creditors were placed there to protect the creditor where the Debtor intends to *keep* the property for sale or use in the reorganization process. In other words, conversion of non-recourse claims to recourse claims is the 'price' the debtor pays to use encumbered property in its reorganization over the objection of the secured creditor. If the property is voluntarily or involuntarily returned to the secured creditor, the non-recourse secured creditor is no longer entitled to this preferred status."

*Matter of DRW Property Co. 82*, 57 B.R. at 993.

By the same token, *Tampa Bay Associates* declared, 864 F.2d at 50:

"Foreclosure is similar to a section 363 sale in that the creditor in each instance is allowed the opportunity to preserve the benefit of its bargain with the debtor by purchasing its collateral at a sale, with a credit offset allowed for any bid up to the full amount of the debt. The lender has the opportunity to become the highest bidder and take title to the property, preserving future appreciation for itself if it feels that the sale price is too low. *See In re Woodridge*, 71 B.R. [189] at 192 (Bankr.N.D.Ca.1987). With this protection, the nonrecourse secured lend-

---

**10.** The "election option" exception to § 1111(b) is not involved in this case.

**11.** In *Pine Gate Associates*, the debtor used its "cram down" powers to cash out a nonrecourse, undersecured holder of a first priority security deed at the value of the debtor's property, in-

stead of the amount of the debt. This resulted in preserving any future appreciation of the property for the benefit of the debtor. The purpose of § 1111(b) was to restore the benefit of the bargain to the nonrecourse secured creditor.

er does not need the statutory protection of section 1111(b). *See id.*"

An additional reason is provided in *Tampa Bay Associates* for rejecting ConCap's contention that it is entitled to assert an unsecured claim. § 1111(b) only applies to "a claim secured by a lien on property of the estate." When ConCap completed its foreclosure of the property, its claim no longer was secured by a lien on property of the estate, and § 1111(b) no longer applied.

Since ConCap has foreclosed upon the property of the debtor, it has received the benefit of its bargain. It is not entitled to status as a recourse claimant under § 1111(b) and has no unsecured claim against the debtor.

## WHO DECIDES ENTITLEMENT TO THE $41,800 CASH DEPOSIT?

■ Judge McGraw ordered this deposit to be posted by the debtor for the specific purpose of covering continuing interest on the $3,300,000 unpaid principal during the pendency of the preliminary injunction proceedings. It is now in the possession of the Waukesha County Clerk and was ordered by Judge McGraw to be held pending his further direction.

The bankruptcy court may lack the jurisdictional authority to decide this issue. A deposit has been construed to be a trust fund and not property of the debtor's estate. *In re Lenk*, 44 B.R. 814 (Bankr.W.D. Wis.1984) aff'd 48 B.R. 867 (W.D.Wis.1985); *In re Illinois–California Exp., Inc.*, 50 B.R. 232 (Bankr.D.Colo.1985). However, *Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir.1987), has declared that, where several parties, including a debtor, claim an interest in a particular asset, the bankruptcy court can determine the interests of the parties as involving a dispute "related to" bankruptcy under § 157(b)(2) or § 157(c)(1) of the Bankruptcy Code. Even if this court has jurisdiction to decide this issue, 28 U.S.C. § 1334(c)(1) enables it to abstain "in the interest of comity with State courts or respect for State law." Bankruptcy Courts frequently will abstain in situations in which their jurisdiction is in doubt. R. Ginsberg, *Bankruptcy*, para. 1125 (1988).

The debtor contends that ConCap never perfected its interest in the cash deposit as required under Wis.Stats. 409.305, 813.06 and 813.07 and therefore has no right to this deposit. ConCap has taken issue with that argument. Because this involves an interpretation of state law, it is appropriate for the state court to address this issue. Moreover, it was Judge McGraw, who, as a condition for granting the temporary injunction, ordered the deposit to be made and later dissolved the temporary injunction. These events occurred before the filing of this chapter 11 case.

Under these circumstances and in view of the fact that the state court action is still pending, this court invokes 28 U.S.C. § 1334(c)(1) and abstains with respect to the issue of entitlement to the $41,800 cash deposit.

This decision shall stand as and for findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

Dated at Milwaukee, Wisconsin, this 23 day of August, 1989.

## ORDER

The court having this date rendered its decision,

IT IS ORDERED:

1. $34,237.22 of the segregated funds presently being held by the plaintiff-debtor is awarded to the plaintiff-debtor, and the balance of the segregated funds, including all accrued interest, is awarded to the defendant.

2. The defendant's unsecured deficiency claim against the plaintiff-debtor is disallowed.

3. Pursuant to 28 U.S.C. § 1334(c)(1), this court abstains from deciding the rights of the parties to the sum of $41,800 plus interest on deposit with the Waukesha County Clerk of Court and defers such determination to the Waukesha County Circuit Court.